MARK ALAN COOPER, Plaintiff-Appellant, v. ILLINOIS STATE UNIVERSITY *et al.*, Defendants-Appellees.

Fourth District    No. 4—01—0644

Opinion filed June 11, 2002.

Nile J. Williamson, of Peoria, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In December 2000, plaintiff, Mark Alan Cooper, filed a second-amended employment-discrimination complaint against his former employer, defendant Illinois State University (ISU). He also named as defendants Victor John Boschini, Jr., the president of ISU; Janet Bremner, director of ISU's human resources department; Margaret Haefner, head of ISU's communications department; and the following members of ISU's board of trustees: Joseph Ebbesen, Carl Kasten, Nancy Masterson, Patricia McKenzie, James Myles, Barbara Scheibling, Nirangan Shah, Myron Siegel, William Sulaski, Gretchen Winter, Willie Fowler, Miles McGrew, Amy Mersinger, Jaime Flores, Nancy Froelich, Diane Glenn, Jack Huggins, and Stan Ommen. However, summonses were issued only to defendants ISU, Boschini, and Bremner (hereinafter defendants); thus, only those defendants appeared in the case.

In February 2001, defendants filed a motion to dismiss Cooper's second-amended complaint, pursuant to section 2—619(a)(2) of the

Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(2) (West 2000)). Following a June 2001 hearing, the trial court granted defendants' motion upon finding that sovereign immunity barred Cooper's complaint.

Cooper appeals, arguing that his cause of action is not barred by sovereign immunity. We affirm.

## I. BACKGROUND

Cooper's second-amended complaint alleged that defendants had violated the Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. §§ 621 through 634 (1994)) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e through 2000e—17 (1994)) based on the following facts: (1) Cooper, a white male who was born September 22, 1957, was terminated as an ISU employee when his position was eliminated; (2) between December 1998 and March 1999, Cooper applied but was not hired for four separate positions at ISU; (3) Cooper was capable and trained to perform those jobs; (4) defendants filled those positions with individuals "of substantially less age, competence[,] and experience" than Cooper; (5) Cooper's age was a "substantial motivating factor" in defendants' refusal to hire him; and (6) in refusing to hire Cooper, defendants also discriminated against him on the basis of his "gender/sex." Cooper sought (1) back pay, benefits, expenses, and compensatory damages of $300,000; (2) reinstatement or front pay and benefits; (3) liquidated damages; and (4) costs and attorney fees.

Cooper's complaint further stated that he had exhausted his administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC). In October 1999, the EEOC issued a "Dismissal and Notice of Rights," which stated that (1) it dismissed Cooper's charge because, based on its investigation, it was "unable to conclude that the information obtained establishe[d] violations of the statutes"; and (2) if Cooper wanted to pursue his age-discrimination claim, he had the right to file suit in federal district court within 90 days.

In February 2001, defendants filed a motion to dismiss Cooper's second-amended complaint under section 2—619 of the Code (735 ILCS 5/2—619(a)(2) (West 2000)), alleging that sovereign immunity precluded Cooper's claim. Following a June 2001 hearing, the trial court issued a letter opinion granting defendants' motion to dismiss and stating, in pertinent part, as follows:

"The defendant [ISU] contends that this court is without subject[-]matter jurisdiction because [Cooper's] claim is barred by the doctrine of sovereign immunity. Suits by a private citizen

against a state in state court, based upon a federal statute, are barred by sovereign immunity subject to certain exceptions. *Alden v. Maine*, 527 U.S. 706, [754, 144 L. Ed. 2d 636, 678,] 119 S. Ct. [2240, 2266] (1999). Sovereign immunity bars suits only in the absence of consent. *Alden v. Maine*, [527 U.S. at 755, 144 L. Ed. 2d at 679,] 119 S. Ct. at 2267. Here the state has consented to claims by private citizens based upon age discrimination pursuant to the Illinois Human Rights Act [(Act)]. 775 ILCS 5/1—101 [through 10—103 (West 2000).] [Cooper] has not pursued this remedy and the state has not otherwise waived immunity. Therefore [Cooper] cannot rely on the consent exception. *Cahoon v. Alton Packaging Corp.*, 148 Ill. App. 3d 480[, 499 N.E.2d 522 (1986)]; *Faulkner-King v. Wicks*, 226 Ill. App. 3d 962[, 590 N.E.2d 511 (1992)]."

This appeal followed.

## II. ANALYSIS

Cooper argues that his employment-discrimination claim is not barred by sovereign immunity because (1) through its enactment of the Act, Illinois has consented to defending itself against employment-discrimination claims, and (2) the Act does not preclude plaintiffs from filing federal civil rights claims in state circuit courts. Defendants respond that pursuant to section 8—111(C) of the Act (775 ILCS 5/8—111(C) (West 2000)), the Illinois Human Rights Commission (Commission) has exclusive jurisdiction over employment-discrimination claims, including claims based on federal laws. We agree with defendants.

### A. Sovereign Immunity

■ The Illinois Constitution of 1970 abolished sovereign immunity but granted the legislature the authority to reinstate it. Ill. Const. 1970, art. XIII, § 4. In 1971, the General Assembly reinstated sovereign immunity when it enacted the State Lawsuit Immunity Act (Pub. Act 77—1776, § 1, eff. January 1, 1972 (1971 Ill. Laws 3446, 3446-47)), which provides, in pertinent part, that the State of Illinois "shall not be made a defendant or party in any court" except as provided in the Court of Claims Act (705 ILCS 505/1 through 29 (West 2000)). The General Assembly later enacted Public Act 83—1012 (Pub. Act 83—1012, § 26, eff. July 1, 1984 (1983 Ill. Laws 6830, 6859)), which also excepted the Illinois Public Labor Relations Act (5 ILCS 315/1 through 27 (West 2000)). See 745 ILCS 5/1 (West 2000).

The doctrine of sovereign immunity, however, is not without limits. For example, sovereign immunity bars suits against the state only in the absence of consent. *Alden*, 527 U.S. at 755, 144 L. Ed. 2d at 679, 119 S. Ct. at 2267. Sovereign immunity also will not bar enforcement

actions brought under section 5 of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV). *Alden*, 527 U.S. at 756, 144 L. Ed. 2d at 679, 119 S. Ct. at 2267.

## B. The Act

■ The Act was passed to secure for Illinois citizens the freedom from discrimination based on "race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, military status, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations." 775 ILCS 5/1—102(A) (West 2000).

Pursuant to section 2—101(B)(1)(c) of the Act, an employer subject to the provisions of the Act includes "[t]he State and any political subdivision, municipal corporation[,] or other governmental unit or agency, without regard to the number of employees." 775 ILCS 5/2—101(B)(1)(c) (West 2000). Thus, the State has consented to being sued under the Act.

■ Section 8—111(C) of the Act provides as follows: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8—111(C) (West 2000). Illinois courts have consistently held that by enacting section 8—111(C), the legislature specifically provided that trial courts do not have jurisdiction to hear independent actions for civil rights violations. *Thakkar v. Wilson Enterprises, Inc.*, 120 Ill. App. 3d 878, 881, 458 N.E.2d 985, 987 (1983) (holding that the General Assembly intended the Act to be the preemptive vehicle for the resolution of employment-discrimination cases); *Mein v. Masonite Corp.*, 109 Ill. 2d 1, 7, 485 N.E.2d 312, 315 (1985) ("[t]he legislature has specifically provided *** that courts have no jurisdiction to hear independent actions for civil rights violations"); *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 322, 547 N.E.2d 437, 445 (1989) ("the legislature intended the Commission to be the exclusive vehicle for settling employment[-]discrimination matters"); *Village of Maywood Board of Fire & Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 581, 695 N.E.2d 873, 880 (1998) ("[t]he legislature established the *** Act as the exclusive source for redress of civil rights violations"); *Teverbaugh v. Moore*, 311 Ill. App. 3d 1, 6-7, 724 N.E.2d 225, 230 (2000) (holding that the Act provides the sole mechanism for obtaining a remedy for sex discrimination).

In *Faulkner-King v. Wicks*, 226 Ill. App. 3d 962, 590 N.E.2d 511 (1992), this court considered whether the trial court had erred by

determining that it lacked subject-matter jurisdiction over the plaintiff's claims under the fourteenth amendment to the Constitution of the United States (U.S. Const., amend. XIV) and Title 42 of the United States Code, sections 1983, 1985, and 1986 (42 U.S.C. §§ 1983, 1985, 1986 (1988)). In affirming the trial court, this court wrote, in pertinent part, as follows:

> "The United States Congress cannot require circuit courts to hear certain disputes. Congress can utilize [s]tate courts to enforce [f]ederal rights, but it must do so subject to all conditions which the [s]tate court imposes on other litigants. [Citation.] Although circuit courts are courts of general jurisdiction, the legislature, by authority of the [s]tate [c]onstitution, has restricted that jurisdiction when the claim involves a controversy covered by the Act. Courts have consistently ruled the Act is the exclusive source of a remedy for an employment-discrimination claim. Circuit courts cannot be compelled to accept such cases under the guise of [f]ederal authority." *Faulkner-King*, 226 Ill. App. 3d at 970-71, 590 N.E.2d at 518.

See also *Cahoon v. Alton Packaging Corp.*, 148 Ill. App. 3d 480, 483, 499 N.E.2d 522, 524 (1986) (holding that a federal civil rights claim must be prosecuted under the same procedure applicable to a state civil rights claim).

## C. Cooper's Claim

Despite the precedent cited above, Cooper contends that the trial court had jurisdiction over his claims. In support of this contention, Cooper cites only the following excerpt from *Erickson v. Board of Governors of State Colleges & Universities for Northeastern Illinois University*, 207 F.3d 945, 952 (7th Cir. 2000):

> "All our holding means is that *private* litigation to enforce the ADA may not proceed in *federal* court. Erickson may repair to Illinois court—for although states may implement a blanket rule of sovereign immunity, see *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), Illinois has not done this. Having opened its courts to claims based on state law, including its own prohibition of disability discrimination by units of state government, see 775 ILCS 5/1—102, 5/2—101(B)(1)(c), Illinois may not exclude claims based on federal law. [Citations.] Moreover, the United States may enforce the ADA against the University and other state actors through federal litigation. [Citation.] But Erickson has not enlisted the United States as her champion *** so this suit belongs in state court." (Emphasis in original.)

Specifically, Cooper maintains that "it is not conceivable" that the Seventh Circuit Court of Appeals was referring to the plaintiff's right

to bring an action pursuant to the Act when it stated that she could seek relief in "Illinois court." We disagree.

■ Regardless of what the Seventh Circuit meant, the language Cooper cites from *Erickson* does not control our decision in this case. Because federal courts do not exercise appellate jurisdiction over state courts, this court is not bound to follow decisions by federal courts other than the United States Supreme Court (and then only to the extent that the Court is interpreting the United States Constitution). See *Prior Plumbing & Heating Co. v. Hagins*, 258 Ill. App. 3d 683, 688, 630 N.E.2d 1208, 1212 (1994). Moreover, although we do not dispute the Seventh Circuit's conclusion that Illinois has consented to defend itself against employment-discrimination claims, as the present case illustrates, the court used a regrettable choice of words in explaining the plaintiff's rights. Had the Seventh Circuit stated that the plaintiff could seek a remedy "under Illinois law," or, better yet, "under the Act," instead of in "Illinois court," this case might not be before us. While the Seventh Circuit's choice of words might be vague or misleading to some, its language certainly does not confer jurisdiction where none previously existed or grant certain civil rights plaintiffs the right to ignore the administrative framework established for such claims by Illinois's legislature. If the United States Congress cannot compel state courts to hear certain disputes (*Faulkner-King*, 226 Ill. App. 3d at 970, 590 N.E.2d at 518), the federal judiciary certainly cannot do so in *dicta*.

We adhere to *Faulkner-King*, 226 Ill. App. 3d at 970-71, 590 N.E.2d at 518, and *Cahoon*, 148 Ill. App. 3d at 482-84, 499 N.E.2d at 524, and thus hold that in Illinois, the Act is the exclusive source of a remedy for employment-discrimination claims. Accordingly, we affirm the trial court's order dismissing Cooper's second-amended complaint for lack of jurisdiction.

In so concluding, we reject Cooper's additional contention that ISU somehow waived any claim of sovereign immunity because (1) the record shows ISU did raise this issue in the circuit court, and (2) even if ISU had not done so, waiver would not apply because sovereign immunity is an issue that deprives the circuit court of jurisdiction, and jurisdictional issues may be raised at any time. *Keller v. Walker*, 319 Ill. App. 3d 67, 70, 744 N.E.2d 381, 383 (2001).

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and MYERSCOUGH, J., concur.